Thank you, Your Honor. John Metzger appearing on behalf of Jacob Vlazquez. So this is a social security disability case where the commissioner has attempted to meet his burden at step 5 of the sequential evaluation process by finding that the claimant is capable of doing an unknown percentage of a large number of jobs. This approach obviously has no statistical validity and therefore cannot constitute substantial evidence upon which a disability decision may be upheld. Now this error was all the more egregious because the appeals council, after Mr. Vlazquez's first trip to district court in 2020, the appeals council specifically instructed the ALJ not to make the same mistake again. And it undaunted the ALJ did. The reason the ALJ was unable to comply with the appeals council's remand order is because the commissioner has specifically trained his vocational experts to give job numbers for large groups of occupations instead of for the individual representative occupation that they're identifying. So do you think this is something that's happening? It's interesting because I've heard a lot of social security cases and this is the first one I've ever seen this argument get made. Is this something that you think is happening in essentially every social security case? It's, it is, it is very, very widespread. You will see there are a lot of, if you look through the history, you'll see there's a lot of occupations. The district court cases especially, you'll see a lot of times the 549,000 job number will be bantied around. For some reason, no circuit court has addressed this issue yet. And I think one of the reasons for that is that the commissioner uses various litigation tactics to make sure this issue doesn't get escalated to an appeals court. And they've certainly done that in this case. So you think it's a strategy that they're saying, hey, don't look at step five, let's go back to step three? I, it appears to be, and to date, after three years of litigating this case, they have yet to address any of my arguments on the merits in their briefs. And that seems to be a deliberate strategy. But at this point, you, I know you're frustrated with the process here, your client is, but you could re-raise these issues in front of the ALJ because it's been remanded? Oh, it was raised in front of the ALJ, and the ALJ, once, once he was informed that the vocational expert was giving groups job numbers for entire groups, just issued a decision in violation of the remand order. So it's like, it's, that's kind of pointless to do that again. Do you have a case that says that in this kind of posture, the government just loses? I mean, I understand the idea that why should they get another chance? It's their burden, and they didn't meet it. But I don't, usually, unless you have overwhelmingly met your burden, we don't usually order a grant of benefits. So is there a case that says, like, they just don't get so many tries? Well, there's a substantial, substantial body of law on defense forfeiture, and they've knowingly, by refusing to address any of the issues that I've raised, I think they've forfeited any, any reasonable defense. And maybe they'll make a defense today, we don't know. But it seems to be a little late in the game. And I believe that any forfeits, any defenses they may raise today would have been forfeited by failing to brief them either in this court or in the court below. But if the, if the RFC determination is going to be reevaluated, wouldn't that then affect this whole issue, the Step 5 issue? Not according to their process. As they've demonstrated in this case, a reevaluated RFC would result in a different RFC finding, and that would result in a different vocational expert saying that someone with that RFC could do an unknown percentage of a large number of different jobs, which, again, would just end us back up here, back here in front of this Court in about two years from now. Well, that assumes that they're going to follow the same process you mentioned. Well, we tried. They've already had one remand instruction not to follow that process, and they did it because it was the only way they could issue a denial. Well, but they were using the same RFC at that point, right? So if they changed the RFC, I thought, I think when I asked the first question today about whether this always happens, you hedged a bit, like maybe not every job category is happening like this. So if it was a different RFC, are we sure they would do this error again? The 2020 RFC findings and the 2022 RFC findings were different. Oh, okay. But if they do a new RFC, it could be yet a third one. Yes, but that still doesn't address the problem of this process they've specifically trained their vocational experts to follow of citing job numbers for entire groups of occupations. And not specific to the claimant? Sure. And in this case, the vocational experts cited three separate occupations as being representative, but she was really citing job numbers for about 2,300 separate DOT occupations. Do you contend they're occupations that have different requirements for the worker? In other words, are they not analogous to the specific job that the VE gave? No. Almost all of the occupations within those groups are going to be outside Mr. Velazquez's RFC. The vocational expert found one that might arguably be within his RFC, but then cited job numbers for the entire groups. Well, one challenge obviously for us is that the district court didn't rule on this issue, so we don't have any ruling by which to review. The district court remands it to the ALJ. I understand you claim or contend that the district court actually couldn't do that to have the ALJ take another look, not just at the Step 5, but also the RFC determination? Well, I think the district court erred in allowing the commissioner to effectively file a cross-complaint against his own decision, and that practice has been specifically disallowed by this court in Brown v. Kijikazi. I wanted to kind of ask you about this aspect of your case. So is that how district courts and ALJs have interpreted Brown to prevent the commissioner from seeking a remand based on what's essentially an input into an otherwise unsuccessful request for benefits? Because Brown was a little different. It had part of the request for benefits was actually granted. That's not true here. Sure. And there's only been a few district courts have ruled on that, one in the end. Basically, whether or not the commissioner can dictate what the terms are on remand by effectively cross-complaint against his own decision. There's just one the other day, about two days ago, out of the Southern District of Texas. There's one out of the District of Oregon and a couple out of the lower courts here in California. So we're not bound by any of those, of course. Of course. And so to try to think about this question, I understand your argument under Brown because Brown does sound pretty broad in its wording, but usually we have rules for when you need a cross-appeal, which seems a little bit analogous. So usually if you're arguing an alternative ground for affirmance, like the outcome should be the same but for a different reason, the Respondent or Defendant or Appellee can do that without cross-appealing because it's just another basis for the same outcome. It seems like what the government is doing here is a little bit like that. It's a little bit like an alternative ground for affirmance that wouldn't need a cross-appeal, so then arguably wouldn't need the cross-claim that you're worried about. But what's a little bit weird about it is it's actually for a remand, not just an affirmance. And so do you have any thoughts on why we shouldn't consider this like an alternative ground for affirmance? I think the best argument for that is it appeals — it appears to me to be a litigation tactic to get out of arguing the real issues that underlie this appeal. And if those issues aren't addressed as they weren't by the district court and haven't been by any appellate court, this is just going to keep coming up over and over again, and I'm going to keep ceding. Well, is the other part of the problem that if you go back to Step 3 analysis, then the burden now shifts again to the claimant, correct? Correct. Okay. But, I mean, the two previous RFC findings — or the claimant has already, in the last six years, twice met his burden at Steps 1 through 4, and there's no reason to think that wouldn't happen again. Well, so, I mean, it seems — I'm not sure, but it seemed like the district court was worried about where the need for alternating between sitting and standing at any time was coming from. So, I mean, it's not impossible that there was a problem there, I think. Can you explain where that part of the RFC that your client needs the ability to sit or stand at any time is coming from in the medical records? Oh, I mean, he's got a — he sustained a severe back injury back in, you know, many years ago, and other than that, I don't — I don't know. That wasn't an issue — the specific RFC issue wasn't something that I briefed and I don't have any citations memorized. But that is — that's at least how I — what I think is what the district court was worried about and why the district court thought a remand was needed to reconsider this. Is that different from your understanding about what the district court thought? Oh, no, that is what the district court thought, but the district court considered my arguments to be moot, and my point is that having a third RFC finding and having a third vocational expert say that the person with that RFC could do an unknown percentage of a large number of jobs doesn't get us any closer to resolution. It would only prolong this issue and it would never get — could never get resolved. And you're saying that even if, on a remand, the ALJ got rid of this sit, stand at any time and instead said something like, don't sit for more than an hour — I'm just making that up — but said something slightly different, you're saying you're confident that at that point there would still be this over-categorization problem of the jobs that would be available? I'm saying that they've already had two bites at the apple and were specifically instructed not to let this — not to let this issue or not to engage in this process again, and they did it because it was the only way they could come up with a denial. And I think for, you know, giving them a third bite at the apple so they can go again, come up with a third RFC and have a third vocational expert give some unsupported testimony would not — would not get us any closer to resolution. Okay. We've taken you over your time. It seems like we don't have any more questions right now. I'll still give you two minutes for rebuttal, but let's hear from the other side. Thank you, Your Honor. Good morning, Your Honors. Elizabeth Feer on behalf of Frank Bisignano, the commissioner of Social Security. I understand the court wants to talk about the substantial evidence, but this is a remedy case and the standard of review here is whether or not the district court abused its discretion by remanding for further proceedings rather than a payment of benefits. And we don't have any legal or factual basis to find this claimant disabled on this record. Even if you agree with my opponent that the V.E.'s testimony was deficient, there's no definitive evidence that there isn't a significant number of jobs that this claimant could perform on remand. And the district court was aware of everyone's arguments. It looked at the agency's argument that there was an error earlier in the ELJ's decision, and it looked at claimant's arguments about the vocational evidence because it says specifically in the remand instructions that the agency should consider claimant's arguments about the vocational evidence. Counsel, can you – I'm just trying to understand whether or not we can go there. In other words, why doesn't Brown sort of foreclose your argument? And then tell me your position on how you see Brown. Brown is – I think that claimant's attorneys are using the favorable terminology in Brown far too broadly. That just means that the agency couldn't appeal the affirmative part of its affirmative for the claimant. We – you know, we can't file complaints, but as Judge Friedland said, that doesn't prevent us from going into court and providing reasons why our ELJ decision was supported or was not. But that's – But the second part of her question is this, that you're asking for, again, not just essentially an affirmance, but you're asking for a remand. That's what you're asking. You're asking for an additional thing. And isn't that, again, sort of a favorable position that you're essentially asking for? That's not true for a couple of reasons. The first reason is that I firmly believe that when Brown is talking about a favorable aspect, it is not talking about individual elements of an ELJ's decision. You're – the Court is supposed to look at the ELJ's decision as a whole, to parse out little pieces of it by saying they're favorable to a claimant or they're not, and the agency can't defend or, you know, decide that it's – the agency had made a policy error in an earlier stage of an ELJ decision just because the claimant didn't argue that is not consistent with Brown. But the other thing is, everyone's assuming that because the RFC here was incorrectly supported that somehow that's in the agency's favor here. These cases have different evidence on remand. It's certainly possible that on remand, claimant could find – the agency could find that claimant has a far more limiting RFC than what's in either of these ELJ decisions. It's possible the agency could find more impairments severe at step two. It's also possible that the agency could find, you know, step three, where claimant – maybe claimant has more evidence that proves he's presumptively disabled before you even look at an RFC. So these are all kinds of elements that can happen on a remand. And again, this is remedy only. I guess that might be true in Brown too, though, that it could have gone back and the ALJ could have not only awarded benefits but awarded even more benefits? Well, that did happen in Brown. The aspect of the ALJ's decision that wasn't favorable to the claimant was remanded. No, but I'm talking about the piece that the commissioner was trying to have sent back. In that case – I mean, I'm sympathetic to what you're saying generally about Brown, but I don't know about this piece of your argument because you seem to be saying, well, look, we don't know what will happen on remand. It's possible the claimant will do even better than where he is now on the RFC, which seems fair. That might be also true in Brown with respect to the portion of the time period where benefits were granted. You might think the claimant in that case not only could have gotten benefits but could have gotten even more benefits. Well, but that was why it was remanded, to see if the claimant could get more benefits. Once you get benefits, that's as favorable as you possibly can get. So the Brown court remanded the unfavorable portion for a full further adjudication. So in that sense, the claimant could get more benefits. Can I ask you here, if all you had done in the district court in response to this argument about Step 5 was say, we think this should be remanded and just said nothing more, could you have gone back to the ALJ and say, okay, well, now that it's back here, we also want you to take another look at the RFC? Yes, because on remand, the ALJ is always supposed to do the five-step sequential analysis. It's really not – it's not appropriate for the court to say, well, you – everything else here is nothing but what the claimant argued about Step 5 is in play, because, again, the record changes on remand. The ALJ is required to do the five-step sequential analysis. Just because you file a complaint in court and only challenge Step 4 or 5 doesn't mean that there isn't these other analyses that the ALJ has to engage in. But that's – I don't think that's true, is it? So imagine another case where it's – the only dispute on appeal with us is something about Step 5. There was some mistake in adding the numbers of the jobs or something, and so we say this needs to be looked at again. If we remand for just a Step 5 evaluation to be fixed, the whole case doesn't start over, does it? I don't understand what you're saying. I don't think that's how it usually works when we – if there's just a Step 5 problem on an appeal and we remand, I don't understand it to start over. Well, Your Honors, I mean, I guess if a court puts specific direction like that in a remand order, the agency is bound by what the court says. But what happens on remand is the – the ALJ has to conduct the – it has to adjudicate disability again. So it's – that's – we have it in our – it's an internal policy manual. It's called the HALEX, where it says that in a court remand, generally the agency reevaluates the case de novo. So that is – that's our internal policy, and I do not think Brown in any way supports the idea that – that the agency can't look at anything in its decision on remand except for what the claimant challenges. And in this case in particular – Just as a matter of practice, just as a matter of practice in the district courts, in the ALJs, is what the Commissioner did here common? In other words, like if Brown were to actually prohibit this, what kind of effect would that have on sort of the usual remand practice in the district courts? I'm really – I don't know how to answer that question. I can say that I don't know what proof my opponent has that there's some kind of untoward policy the agency has to train VEs to provide inaccurate testimony. Well, part of the – I think – sorry, just to follow up on this, that seems like a different answer than I – Yeah, I'm just trying to – I mean, Brown places some limits on what can be remanded. And so if here in this case Brown meant that you can't actually ask for a remand on the RFC determination, what kind of impact is that going to have on the practice of these – of just how these cases are handled when they go up to the district court and then get sent back down? Well, again, Brown is about the agency cannot challenge its own favorable finding. There isn't any basis in Brown for – because somebody who practices in this area regularly and your opposing counsel can offer the same comments. I'm just trying to understand as a practical matter, what would it mean if Brown extends to this kind of new – this kind of sublevel of a claim? Well, I think it would be inappropriate. And, again, it would prohibit the agency from doing those things that I mentioned earlier that would actually be favorable to the claimant. Again, the agency could find the claimant disabled at step three, which is before the RFC and the district court mistakenly referred to the RFC finding as step three. But, again, so the agency is required to – we review all of these cases for policy compliance. If someone files a complaint, they may – and this complaint is completely generic, so everything was in play based on the complaint here. So you – we look at our decision and we say, okay, can we defend this? Is it defensible? If we find an error in the decision that's not the same as what our opponent says, if you say the only thing that a court can remand for is what the claimant says, then you're essentially forcing the agency to defend issues in the ALJ's decision that might not be policy compliant. For instance, step two, say on remand, there's a case where there's no mental impairment, and we say, oh, well, the ALJ didn't address that correctly. On remand, we should be able to correct that error, and that's what we have here. We have an error that's not the same as what claimant identified, but it's still an error, and the district court looked at all of this. It did not abuse its discretion. There is no basis for my opponent's theory that he's entitled to benefits on this record. First of all, the standard of review is abuse of discretion. Well, hold on. But his claim is more specific. I mean, the summary judgment, you read that, it's talking only about step five, and it goes on to explain what the error that they indicate happened here, which, by the way, was the same error that occurred the last time. So why isn't he entitled, as the statute allows him, to appeal the portion of the decision that he thinks was wrong? And he did that. He appealed it to the district court. The district court then said, no, I'm going to follow what the commissioner said. I'm going to review step three. Not what he filed. Why isn't that incorrect? Because the district court looked at everyone's arguments. It had everything in play there. It agreed with the agency there was an error earlier in the ALJ's decision, which implicated my opponent's theory of error. So the district court acknowledged that and said clearly in the remand order, the agency should address claimant's arguments about the vocational expert's testimony. And this isn't the same error here, because the first V.E. testified that when it was a he, asked about whether or not these broad categories involved individual job numbers. And that V.E. said, I don't know, basically. Like, it could and it could not. So we agree to a remand. The agency looks at it again. The appeals counsel tells the ALJ, you know, look at this again. And it said on that record, it doesn't appear that substantial evidence supported the ALJ's decision. It comes back. So what is this? And, again, you're the expert. I'm not. But I'm looking at how you have the review. Is it the review council? Appeals council.  They reviewed the ALJ's decision. They said, everything's copacetic here. Nothing to see. Let's move on. And it was only at that point that they had to appeal again. Isn't that right? That's the first time the agency, the appeals council, looked at. They didn't find an error. They claim it comes into court. We all agree there's an error. Then it goes back, and the appeals council, he didn't have to go back to the appeals council the second time around. Because once it hits a district court, you don't have to go back to the appeals council before you end up in court. So that's not correct. What you just said is not correct. Is it your view that the ALJ on the remand fixed the error? Yes. And that was where I was getting to. And because the ALJ asked the V.E. specifically on page 692, because of the remand order, I'm asking you, is this number that you gave a specific DOT number, or is it different jobs? And the V.E. testifies for like five pages between 692 and 699 about how in her, the way she came up with those numbers, she's using the particular DOT code as a representation of other occupations within that larger code that fit the parameters of the hypothetical limitations. And the ALJ is not, according to the Supreme Court in B.S. stack, the ALJ is entitled to rely on that kind of evidence, because it had markers of reliability. What's the other? So your position is that this broader group, although it's bigger than the specific job, still has the work requirements that the claimant could perform. Yes. Okay. You're opposing counsel in dispute, though. I asked him that question. And he says that's not true. Right. And that's why we're in litigation. But that doesn't mean that there's any abuse of discretion here.  Although, curiously, nobody's — did this get briefed in the district court, this particular issue? Because it wasn't briefed here, at least from your side. Right. Because the issue is the remedy. It's whether or not the district court abused its discretion by remanding for further proceedings, rather than payment of benefits. The only way you would get the alternative — he already got the remedy he's entitled to here, which is remand for further proceedings. The district court ordered the agency to address his problem with the vocational expert testimony. He is not entitled to a different remedy on this record. There's no evidence. No, but why — I mean, if you thought that the Step 5 determination was fine, which I take as your position here, why not in the district court tell the judge, look, we have some concerns with other aspects of the ALJ's analysis, but those weren't appealed, and the Step 5 analysis that the ALJ did is just fine. Here's why. Please just deny the claim. Because we — we said we don't agree with it, but, you know, I call it a litigation strategy, if you must, but we — I don't understand the strategy, then. Like, if you don't agree with it, and you could just end the case rather than have it be remanded and now appealed. Because our theory of error would implicate that Step 5 finding. You can't — it's not going to be the same RFC necessarily on remand. It could be if the ALJ explained that — But why not just treat it as essentially harmless error to say, well, assuming the RFC decision is correct, so is the Step 5 determination. There's too many things that could be different on remand for us to have done that. We said we didn't agree. We weren't — we weren't required to do any further than that. The district court looked at our argument. The district court looked at Clayman's argument and came to the conclusion that this case was not worthy of payment because there are outstanding issues. And there's just — there's no way around that. There are outstanding issues here. It's not — a claimant has to be disabled under the Social Security Act in order to be entitled to benefits. There is no medical proof here. There's no medical argument that he's disabled, and there is no contradictory vocational evidence that the ALJ was required to resolve as in White or as in Buck. But as a matter of just, you know, agency policy, if you get a case like this and you're looking at it and you see, all right, the RFC determination seems incorrect — I mean, benefits were denied, you know, but the RFC determination seems incorrect, and the Step 5 analysis we think is correct, assuming the RFC analysis is correct, is it agency policy to nonetheless ask for a remand so that the claimant can get another shot at the RFC? Well, Your Honor, if we found that the RFC was incorrect, we couldn't also say that the Step 5 is correct. So you view them just as related. Okay. On this record, with that RFC, it was supported, but we don't agree with that RFC. We don't find it was policy defined. So what do you think was wrong with the RFC? That the ALJ didn't explain the reasons for the sit-stand option. He didn't provide the necessary analysis under our Social Security ruling 96B. And don't you think that was in plaintiff's favor? Not necessarily. Claimant's favor? Not necessarily. And that's one of the big things. That RFC could have been more limiting. It could be, you know, that the claimant needs less of an ability to stand and walk or, you know, something like that on remand. So that is an assumption that's not supported. Even though the claimant was not contesting that or saying that, though, right? But we can't be forced to defend a decision that has elements to it that we know are not compliant with our policy. Right. I mean, I guess there still is this methodological. I get your point that if you have a different RFC, what the jobs are that we should be focused on in Step 5 are going to change. The claimant seems to have just this position that methodologically, the way this is being done with groups is not okay. There's no proof of that. No, I understand your position there. But there's been no ruling on that by anybody. And that seems to be part of the claimant's frustration. Well, the first time around, we agreed with the claimant that there was a Step 5 error. And then the agency tried to correct it. My opponent doesn't agree with that. That's fine. Let's pause there because that's what I have been hoping to follow up on. You say, like around page 697, I think you're saying, is where it's corrected. Can you just walk me through because you didn't do this in your brief. So I'm trying to read it and understand what you're saying about how it was fixed. I don't think I see it, but can you explain why you think it was fixed? So at the bottom of page 693, the ALT says to the VE, this was an issue with the remand, so let me ask you this. With the numbers that you gave, are those national numbers of jobs in the national economy, do those relate to specific DOT codes, or is there a grouping? And then the VE says the government doesn't provide information. It only does groups. And I've seen this in other cases where a VE will say there is no source anymore that just finds job numbers by a specific DOT code. So the VE is explaining that, why she's using this grander. So far, that doesn't fix the problem because that's exactly the problem they're saying is the problem. So where does it get fixed? Well, then the ALT, so, okay, so you can't, the VE is saying that I can't provide a specific DOT code. So you can't, she's saying that she can't. It's impossible to do? It's impossible to do. That's what she said. The government only does groups. So then she says, the ALJ asks, follows up, well, how do you extrapolate? The VE says, well, I know that all the numbers I gave are light. So she takes the specific code and then goes in with her own personal knowledge about what kind of, what occupations are under that umbrella SOC code. And then she says she takes out the ones that she knows are heavy and medium. She says that, I believe, on that same page. Then she picks the ones that are light, and then on page 695. Wait, sorry, you're saying it was on 693 she takes out the heavy and the? She says, well, she says on 694, I know that all the numbers I give are light. Then going down, she says there's 11 titles in the group, which is on the last, the second last answer on 694. And then, again, she says, I just picked the ones that were light and the ones that were information, but the other ones would be appropriate as well. So she's explaining, you might not agree with the way she's explaining this, but she's providing an explanation, which under BESTEC in the Supreme Court is evidence the ALJ is entitled to rely on absent any evidence to the contrary. And we don't have any contrary evidence here. The ALJ goes, or the V.E. goes down to say that, or the ALJ says, so information clerk, let's make sure I understand this, is part of a grouping, a total of 11 different occupations. All of those would be appropriate. The V.E. says yes. So, and then she goes down, the ALJ says, okay, I understand now. That's essentially the same with regard to, anyway. So the, if they had other titles within the group you gave me would be a representative sampling of the titles in that group. The V.E., and again, I understand that some, a reasonable person could look at this and disagree, but under Supreme Court law, under the law of this court, you know, Ford says that V.E.s are entitled to be, or ALJs are entitled to look to their testimony as reliable. And we don't have a contradictory presentation here that those aren't the right numbers. Those aren't, you know, my opponent does go on to question the V.E., and in his view these numbers are, do still represent the larger SOC group instead of the individual ones. But that's, that's cross-examination. That's not evidence that the ALJ could say, oh, this is contradictory to what my V.E. said. He was entitled to rely on what explanation the V.E. gave, absent that, you know, it being feeble on its face, as the court says in B.S. DEC as, you know, there isn't anything that contradicts it. And my opponent has said many times that there is some percentage of occupations out there that fit with the hypo. So how does that translate into he's entitled to benefits on this record just because the agency made a mistake twice? Can I ask you, let's just assume hypothetically that we were to agree with your position and say, well, now that we look at this, there really wasn't a step five error, at least in the way that the claimant is arguing, this kind of methodological error of grouping. Let's assume we agree with that. At that point, could we send the case back and direct the court to enter judgment for the commissioner? Or in your view, would it still actually need to be remanded? It would still need to be remanded. Because that error is we are compelled to issue decisions that are policy compliant. And we agree that this one was not policy compliant. We have different reasons for why it wasn't, but that doesn't mean that the remedy in this case wasn't the appropriate remedy. You earlier in the argument referred to some policy that says this, essentially, that you have to redo the whole evaluation and make sure that it's all compliant every time. Is that in writing somewhere? It's in the HALEX. It's not because we briefed this in terms of the remedy and the abuse of discretion. So it's not in our brief, but I could provide that for you if you'd like. I think that would be helpful if you could cite us to that, because that isn't something at least I was aware of. Okay. I mean, is the reason for that, just the nature of these kinds of cases, is that a person is developing, you know, in the time that we've had since the last ALJ, there's some number of years, and the person's health and physical limitations have changed?  Yes, Your Honor, that's correct. They're not static. And, you know, yeah, the evidence can change on remand that would be in the favor of the claimant. Again, more impairments at Step 2, presumptive disability at Step 3, you know, and the RFC and the sort of what we used to call a credibility finding, those are findings an ALJ has to make, but they permeate the whole ALJ decision. So you can't just parse pieces of it out and say, you know, on remand, what if the claimant went back to work? And that's Step 1, and that would be in the agency's favor. You can't get benefits if you're working. So there are all kinds of moving pieces for these cases when you remand. Isn't there a back-in-time element of this, though? Like, couldn't the person have been entitled to benefits for 10 years in between or something? I don't understand why it would go to the present, necessarily. Well, medical evidence is, I mean, you're right. There's like a, you know, where that first or the ALJ decision that's in question, there is a finite time there. But a lot of times we get medical records that, you know, go back, you know, that re-invade that period, so to speak, because there's more information for the ALJ to determine, and that could easily go in the claimant's favor either at Step 2 or Step 3. So, okay, you're making arguments for why you should get another look at this. Is there ever an end to that? I mean, what stops the agency from just every time saying something wasn't perfect here, we need to do it again and doing that for eternity? Well, Your Honor, again, the statute requires that the claimants prove disability with medical evidence. And your case law says, and I believe it's Strauss, no matter how egregious an ALJ's errors are, you still have to satisfy the statutory requirement. So, and I understand the frustration that that, and I mean, I would like to think that as an agency, we wouldn't do that at some point in some level of quality control or whatever. We would find those errors. But to answer your question, if somebody is not meeting the statutory requirements, we shouldn't, the court shouldn't be paying those people. And Strauss cites a Seventh Circuit case that's called Briscoe where the agency had, or the district court had ruled in favor of the claimant finding benefits based on obduracy because it was kind of that similar situation. It just felt like the agency is not getting this right. I'm going to stop this and award benefits. And the Seventh Circuit said, no, you can't do that. You have to be, you have to satisfy the requirements of the Act. And this Court says that in Strauss. It says that in Brown-Hunter, I believe. It says it in Leon. You know, there's many cases in this Court that say the same thing. And Strauss was a case where the district court had remanded for payment because it said the agency didn't follow an appeals council order, which is what my opponent is saying here. And this Court said, no, you can't do that. And that was about the same time period as we have here. It was about eight years from the application to the court proceedings. I was just looking at the ALJ decision. So there's jobs with some, you know, job titles with numbers, right? So we have handbag frames inspectors, 549,000. But I take it there's not 549,000 such jobs that's the broader group? Yes. Okay. So does it matter what percentage of the 549,000 are this particular job, handbag frame inspector? Again, the ALJ was presented with that evidence without any contradiction. So whether or not it's accurate, I can't say. But what the record showed before this ALJ, he had the right to rely on that testimony as accurate. But don't we have to find out what the actual number is, not just these general numbers? Well, we tried to do that. And I understand that people disagree with that. The V.E. tried to do that here. What happens on remand now is that will. And I can assure you if the agency finds, if the V.E. can't come up with numbers, then the claimant will be disabled. But did the V.E. give on this record an estimate to say, well, we don't know exactly, but I think maybe 5% of the 549,000? Well, you know, it's got to be some percentage of that, and that's a huge number. So, you know, to say that the agency has not been able to identify a single occupation is really not correct. Well, but that's where I guess it gets back to the issue of whether if there's lots of jobs within the group that the claimant could perform, and handbag inspector is merely one of them, then one could say, you know. Why did the V.E. give more? Yeah. Well, the ALJ did say these are representative. And that's, you know, that's what usually happens. A V.E. will give three or four jobs that are representative. But I think your opposing counsel made the argument, I think, that this category includes which requires heavy exertion and so would not be the same. V.E. said she was getting rid of the jobs that were not light and sedentary. And so then what percentage was left? I don't know. But that's, you know. There isn't a contrary finding there. And, again, this is going back. So the agency can re-adjudicate this. But can I ask you just, so the first one was handbag frames inspectors 549,000. So is it the Commissioner's position that this claimant could perform all 549,000 such jobs, including a handbag frame inspector? That's what the V.E.'s testimony says. Wait. I thought, no, because I thought you just said they took out Stonegrater. Oh, I see what you're saying. So then the V.E.'s testimony is there's some percentage of that that we — Is Stonegrater within the 549? Yes. I don't know. I honestly don't know. I'm not a V.E. I don't know how she got those numbers. But what does the record say about that? The record says that she's looking at — the record doesn't say that that 549,000 is the all total. And I think in that there's one category where it's 782 jobs, different jobs. There's another one where it's 15,030 different occupations within that code. So I don't know. I know what my opponent says, but I don't know if that's true because that's not — that's not my expertise. And this V.E. was saying something that, again, had what the indicia of reliability, markers of reliability, sufficient indicia. It wasn't feeble, and it wasn't contradicted on this record. So whatever the real number is, this ALJ was entitled to rely on that V.E.'s testimony based on how this played out during the hearing. My opponent never presented the arguments that he's presenting in court to the agency so that the ALJ could resolve some conflict, as is what happened in Buck and in White, that a claimant's attorney presented alternative job numbers. This Court said, hey, those are so different. You, ALJ, have to go resolve this conflict. There isn't that alternative evidence here. There's a theory that the agency is doing something wrong with V.E. that the V.E. provided were too large, but that's not the same thing that requires an ALJ to specifically address that testimony and resolve any conflicts. There's nothing like that here. And the district court looked at all this evidence. Again, what this Court is —  I'm sorry. Can you just pause? What do you mean — what do you think is missing? Like, they were arguing that this is too broad a category. You're making the same mistake again, I think. Right? What's missing is, for — again, this is a remedy case. Claimant's already getting a remand. The district court already said, address your argument. What's missing is proof that there are not enough occupations for — that this claimant can provide. But at Step 5, that's the government's burden. And we presented evidence that my opponent disagrees with, but it was enough under Supreme Court law, under this Court's law for the ALJ to have found was substantial. There is no alternative. But you don't want us to affirm on that basis because you think we can't. Well, there's a different error, and it's going back for that to be readdressed anyway. So, I mean, the court can find — you know, like, a district court, which is, you know, essentially the trial court, they can find any error they want in remand. I mean, you say that in Trikler. You know, when a district court finds any error in the ALJ's decision, it either remands or it pays. This court — this district court did exactly that and remanded for further proceedings because that was the only appropriate remedy here. That's — this — no matter what you think the ALJ — Okay. I think — I think we've — I think everyone's questions are exhausted, so I think I should have you stop because we're way over your time. Well, that's — this was not an abuse of discretion. Thank you, Your Honor. Thank you. I said two minutes, but we went so long. Why don't we give you five minutes? Thank you, Your Honor. If I may, I'd just like to address a couple of points. So it is clear from the evidence that the vocational expert in the 2022 hearing did not reduce the gross job numbers for the number of occupations down to account for those occupations that might be within the claimant's RFC. She just rounded off from 549,200. She rounded that down to 549,000. She then — she also — she took a group of 194,360 jobs, rounded that down to 194,000. There is no way that she reduced — reduced that to account for the number of jobs within the claimant's RFC. That's the exact approach that the defendant teaches vocational experts to use in their training materials. We can look at all of these jobs. The first group had 782 occupations. The second group had 1,519 occupations. So we're looking at about 23 occupations. All of those are listed on the Department of Labor's website. There's citations and web links inside my briefs. You can see what they are, and you can see that almost all of them are going to be outside Mr. Velazquez's RFC. So any argument that somehow these numbers were reduced to reflect the number of jobs that Mr. Velazquez could do, that argument is out the window. It's completely false. But that's the situation the commissioner has taught his vocational experts to use, and that's the process we're dealing with today. Okay, so the government is arguing that you didn't really say that at the time so that ALJ wasn't confronted with the idea that the V.E. wasn't saying something that made sense? I asked the V.E. at the hearing regarding the handbag frame inspector. I'm like, so for that group, how many occupations are in that group? And she said 782 occupations. And I believed that ALJ at that point, knowing he was instructed not to rely on group numbers, I assumed that he would read the appeals counsel remand order to find that if the vocational expert can only give numbers for large numbers of occupations, he would find that the agency had not met its burden at step five. Surprisingly, the ALJ, I did not see this coming, just knowingly decided to violate the appeals counsel remand order and cite groups for entire groups of jobs despite specific instructions not to do that. But did you – I mean, before the ALJ, did your client file any kind of briefing on this methodological issue? Not that I – not that I recall. But – Why isn't the best course here just to – I know you're frustrated with the time it's taken, but why isn't the best course just to have the ALJ reconsider all of this? Oh, because we've already done that. We've already – it's already been sent down for this reconsideration of this exact issue. And they just – So you essentially want to have benefits almost like a sanction for them not answering your argument? Your Honor, they're caught in a web of their own weaving. They taught their vocational experts to use this system, and now they're trying to disavow it and say we never – I don't know why they didn't argue what they just argued to us today in their brief. This is a problem we have. But today they are saying it's murkier than what you're saying. You're saying this is very obviously the same problem again. And looking at these pages around 694, I mean, I see why you're saying it's the same argument again, but I also see why she's saying it's murkier, because it does seem like the VE tried to say I tried to account for this. And then you're telling us now, when the VE said I was trying to account for this, that you didn't very clearly say to the ALJ this is the same problem again. And so I'm not quite sure now how we can say they just did the exact same thing again as you'd like us to when maybe they didn't. It's a slight variation on the same thing again. Or maybe not even the same thing again. They made a related error, but they thought they were doing something maybe that was not the same error. Sure. And I think it's a little late. It's a little late in the game for the commissioner to start raising a defense at this late date, three years into the litigation. But I think the point is that the commissioner or the commissioner's attorney quite multiple times said that Mr. Velazquez has not established his entitlement to benefits. Mr. Velazquez's obligation is to meet the requirements at steps one through four. At step five, it turns to the commissioner's burden. And she's saying Mr. Velazquez has not met the commissioner's burden, but that's not Mr. Velazquez's burden. And what is your response to this idea that there is a policy that every time they look at a case, they have to start up from scratch? Oh, that is the preference of all government agencies to be able to do things without regard for judicial oversight or with regard to specific instructions from the court. That's obviously not permissible. And any government agency can write a policy manual saying we don't like to follow court remand instructions. It does not excuse. But just as a practical matter, though, when these things get sent back down to an ALJ, haven't some of the circumstances changed with the claimant that might actually even be helpful for the claimant to show, listen, you know, in the last several years, things have actually gotten worse for me, and I want to now put that in front of the ALJ? In practice, once things get remanded by the court, even if the court gives very specific instructions, the ALJ says, well, it's our policy not to follow the specific instructions because the Appeals Council decided to vacate this decision. We're just going to hold it a de novo hearing. A perfect example of that, the last time Ms. Furrier and I appeared before this court three years ago arguing White v. Kijikazi, the court in that case said on remand, remand is required to allow the ALJ to violate the vast discrepancy. But, I mean, in this case, if it turns out that your client's condition has gotten seriously worse in the last two to three years, are you saying that you shouldn't be allowed to tell the ALJ that? I mean, why would you want that rule? Oh, well, if he's entitled to benefits now, that wouldn't be necessary. But there has to be some sort of end to the litigation instead of just continually remanding for the better part of a decade to address Step 5 issues. And the reason they can't do this is because they're, again, caught in a web of their own waiving. I feel like I'm caught in a web myself. I don't think we have more questions, so we will try to figure out how to get out of this web. Thank you both sides for the argument. Thank you. This case is submitted.
judges: FRIEDLAND, BRESS, MENDOZA